UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN O'PHELAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 03-C-00014 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| FEDERAL EXPRESS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen O'Phelan filed this lawsuit against her employer, Federal Express Corporation ("FedEx") alleging that she was subjected to a hostile work environment because of her gender and pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). She also alleges that she was retaliated against for complaining about the hostile work environment. For the reasons set forth below, FedEx's motion for summary judgment is denied.[1]

## BACKGROUND

O'Phelan was hired by FedEx in April 1994 as a cargo handler at its facility at O'Hare International Airport in Chicago, Illinois. On her application for employment was a notice stating in large capital letters, "IMPORTANT - PLEASE READ AND SIGN," below which were printed the terms of employment. The last of these stated in part: "To the extent the law allows an employee to bring legal action against Federal Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming my lawsuit, whichever expires

---

[1] In addition to her response to FedEx's motion, O'Phelan also filed a motion to strike the affidavit of Andrea Mazzuchi. Because it was not necessary for the court to rely on Mazzuchi's affidavit in deciding the summary judgment motion, the motion to strike is denied as moot.

first." O'Phelan's signature appears directly beneath this statement on the application.

On April 10, 2001, O'Phelan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") alleging discrimination based on gender and pregnancy and also alleging that she had been retaliated against by FedEx for filing a complaint. O'Phelan's complaint and subsequent allegations of fact focused principally upon the behavior of John Parrilli, her team leader. Parrilli was responsible for assigning O'Phelan's tasks for the day, directing with whom she would work, recommending disciplinary action if necessary and authorizing overtime and time off when a supervisor was not available. O'Phelan alleges that, between 1999 and late 2001, Parrilli routinely importuned her for sex and/or other intimate acts. O'Phelan also alleges that when she refused, Parrilli would frequently fly into jealous rages and use vulgar or abusive language toward O'Phelan. O'Phelan also alleges that Parrilli would become upset if he observed her speaking to other men, and that he occasionally made inappropriate comments about O'Phelan's husband, children, and her 2001 pregnancy. O'Phelan alleges that Parrilli attempted to kiss her on a number of occasions, and even tried to force her to kiss him when she refused. She alleges that Parrilli stalked her around the workplace, followed her home, begged her to show him her breasts, and told her that if he could not "have her" he would make her life tough. Although O'Phelan alleges that Parrilli propositioned her almost every other day, she also admits that there were times when Parrilli would cease his importunings, but that he would later resume. Coworkers have stated that Parrilli and O'Phelan would at times appear to be friendly and at other times not speak to each other. Furthermore, O'Phelan admits that she occasionally had lunch with Parrilli, as she did with other coworkers, and that she occasionally encountered him at social functions outside the workplace. O'Phelan alleges

that she complained to her supervisor, Fernando Camporese, but alleges that Camporese was ineffectual in curtailing Parrilli's behavior for more than brief intervals of time.

On December 20, 2000, O'Phelan, Parrilli, and Camporese met with Christopher Surtz, the Senior Operations Manager at the site, in response to O'Phelan's allegations of harassment. At the meeting, O'Phelan complained to Surtz that Parrilli had been bothering her, and Surtz, in his sworn statement, has stated that he responded by asking Parrilli to cease and telling both O'Phelan and Camporese that they should immediately contact him should any other incidents of harassment occur. O'Phelan alleges that after the December 20 meeting, Parrilli's behavior became hostile and retaliatory; he threatened O'Phelan with termination on a number of occasions and demanded that she do heavy work, despite the fact that O'Phelan's doctor had recommended that she perform only light duties due to the possibility of miscarriage. Following one such incident, O'Phelan complained to Camporese, who suggested that she file a formal complaint with FedEx against Parrilli. Camporese then showed O'Phelan how to access the online form used by FedEx for filing such complaints.

Tom Smith, the Managing Director, investigated O'Phelan's formal complaint, interviewing O'Phelan, Parrilli, Camporese, and various other workers at the FedEx site. Although Smith was unable to substantiate O'Phelan's claims of systematic harassment, he recommended that Parrilli be demoted from his position as team leader and that his starting time be altered so that he and O'Phelan would not be working alone together. Smith further recommended that Camporese be issued a 'counseling' for failing to document O'Phelan's allegations, and that an offer of relocation be extended to him.

Nevertheless, O'Phelan alleges, the retaliation continued, with Parrilli assigning her repeatedly to difficult tasks that normally rotated among members of the team. In March 2001, O'Phelan took three weeks of leave, allegedly because the stress induced by Parrilli's conduct was negatively affecting her pregnancy. At one point, O'Phelan alleges, an unknown person placed a pornographic magazine in her work mailbox. On March 8, 2001, O'Phelan submitted an FMLA Certification of Health Care Provider, stating that her symptoms were caused by job-related stress. On April 10, 2001, O'Phelan filed her complaint with the EEOC and IDHR.

On May 30, 2001, another FedEx employee, Bill Tharge, filed a complaint against O'Phelan for allegedly lifting her shirt and exposing her bare stomach to show Tharge the extent of her pregnancy. O'Phelan denied the allegation to Surtz and claimed that this was another incident of retaliation.

When O'Phelan's son, Michael Luis, was born, Camporese directed his secretary to post a notice, which stated: "KATHY BARROSO HAD A BABY BOY, **MICHAEL LEWIS**, ON 9/1/01. 7 Lb. 14 oz. 22 inches." (bold type and underlining in the original; Barroso is O'Phelan's married surname). O'Phelan alleges that this notice was less warmly worded than the customary birth announcements at FedEx and that because one of her coworkers had the surname "Lewis," the notice was a defamatory attempt to suggest that the African-American coworker was the father. O'Phelan claims that the note was another example of Camporese's retaliation. Camporese claims that it was a typographical error by his secretary.

Parrilli began taking extensive medical leaves in October 2001 to seek treatment for cancer, to which he succumbed in May 2003. O'Phelan alleges that although the unfair delegation of work ceased at that time, she was still subject to "teasing" by other coworkers, who referred to her

4

periodically as the "Black Widow." However, throughout her employment at FedEx (which continues to the present time), O'Phelan has consistently received superior performance evaluations from her supervisors and regular raises in pay. In December 2002, O'Phelan received her requested right to sue letter from the EEOC, and in January 2003 she filed suit against FedEx in this court, alleging violation of Title VII of the Civil Rights Act and the Pregnancy Discrimination Act.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 248. The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).

**A. Enforceability of the Six Month Limit in Which to Bring Suit**

FedEx first claims that O'Phelan's suit is barred by the employment agreement, which precludes employees from bringing legal actions against FedEx if more than six months have passed since the events giving rise to the lawsuit. O'Phelan has alleged that she was subjected to a sexually hostile work environment extending from approximately November 1999 until February 2002 and suffered acts of retaliation from January 2001 through February 2002. FedEx asserts that because O'Phelan's lawsuit was filed in January 2003, actions that occurred more than six months before

5

January 2003 – or prior to July 2002 – are excluded by the employment agreement.

Before a Title VII suit can be filed in federal court, a charge of discriminatory practice must be submitted to the EEOC. 42 U.S.C. § 2000e(f)(1) (2000). In deferral states such as Illinois, a claimant has 300 days after the events giving rise to the claim in which to file an EEOC charge. 42 U.S.C. § 2000e-5(e)(1) (2000); *Gilardi v. Schroeder*, 833 F.2d 1226 (7th Cir. 1987). O'Phelan filed her charge with the EEOC on April 10, 2001, during the period in which she claims she was being harassed and subject to retaliation.[2] The EEOC retains exclusive jurisdiction for 180 days after a charge is filed. 42 U.S.C. 2000e-5(f)(1) (2000). After 180 days, the EEOC may issue a notice of a right to sue to the complainant; such notice is a prerequisite for filing a suit. 29 C.F.R. § 1601.28(a)(1) (2004).

FedEx argues that the limitations clause in its employment agreement with O'Phelan was a reasonable limitation of the statutory limitation period in which legal actions may be brought. FedEx cites in support of its argument *Taylor v. Western and Southern Life Insurance Company*, in which a contractual six month limitation on the time in which suit could be brought was deemed enforceable in an employment discrimination action based upon Title VII, 42 U.S.C. § 1981, and various state law claims. 966 F.2d 1188 (7th Cir. 1992). With respect to the Section 1981 claim, the court in *Taylor* held that since there is no statutory limitation prescribed within the Section, state law

---

[2] O'Phelan alleges that she was subject to a hostile work environment between November 1999 and February 2002. Some of the acts must therefore have occurred outside of the prescribed 300 day limit in which a charge of discrimination must be brought. However, consideration of the entire scope of the hostile work environment claim, including behavior allegedly occurring outside of the statutory time limit period, is permissible for the purpose of assessing liability as long as an act contributing to the hostile work environment occurred within the statutory time limit period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

6

limitations controlled and a six month contractual limitation could apply to a Section 1981 claim. *Id.* at 1205. However, the plaintiff's Title VII claim was allowed to proceed. *Id.* at 1206. Although it did not comment specifically upon whether the six month limitation was unenforceable against Title VII causes of action, the court noted that the Title VII claim could be brought by the plaintiff after he had received notice of his right to sue. The implication in *Taylor* is that the six month limitation would not have been enforceable as to a Title VII claim.

O'Phelan argues that the six month limitation in her contract with FedEx effectively abrogates her right to bring a Title VII suit because the 180 day period during which EEOC had exclusive jurisdiction effectively prevented her from filing suit within the six months following the events at issue. Courts have previously held that contractual six month limitations on the filing of lawsuits, similar to those in O'Phelan's contract, are unenforceable with respect to Title VII claims because the 180 day period of EEOC jurisdiction prevents a plaintiff from filing suit before expiration of the six month limitations period. *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002) (citing *Salisbury v. Art Van Furniture*, 938 F. Supp. 435, 437-438 (W.D. Mich. 1996)). In response, FedEx argues that parties can alter the substantive provisions of discrimination statutes, such as Title VII, by agreement. FedEx cites *Gilmer v. Interstate/Johnson Lane Corp.* in which the parties agreed, inter alia, to waive their statutory right to trial by jury in favor of compulsory arbitration. 500 U.S. 20, 23 (1991). But FedEx's argument falls short of the mark. As the court in *Lewis* explained, arbitration clauses, such as that in *Gilmer*, ultimately lead to resolution of a dispute, whereas enforcement of a six month limitation on claims effectively prevents the plaintiff from having any mechanism for redress under Title VII due to the EEOC's administrative requirements. 241 F. Supp. 2d at 772. To permit such a

7

contractual limitation barring an employee from filing a Title VII claim would be to impermissibly condone a prospective waiver of an employee's substantive rights under Title VII.

FedEx then argues that O'Phelan could have applied for an early right to sue notice before the end of the 180 day EEOC administrative period. While true that in this circuit a claimant need not wait 180 days before applying for a right to sue, *Morris v. Albertson*, No. 01 C 2099, 2001 WL 936118 (N.D. Ill. Aug. 17, 2001), FedEx misconstrues the philosophy underlying that ruling. In *Walker v. Federal National Mortgage Association*, the Tenth Circuit explained that the purpose behind allowing a complainant to request early notice of a right to sue is the protection of the aggrieved party from lengthy delays occasioned by extended administrative proceedings or bureaucratic backlog. 240 F.3d 1268, 1274 (10th Cir. 2001). Such a letter will be granted only if the designated EEOC official determines that the realities of caseload and staffing will disable the EEOC from completing its task within 180 days. *Id.* at 1275. Following such a finding, the EEOC may then grant an early right to sue, but only if the designated official determines that the parties' interest would not be better served by retention of the charge for further administrative processing. *Id.* Thus the grant of an early right to sue letter is contingent upon the EEOC's determination that it will not be able to resolve the issue in 180 days. It is not intended as a short cut to force a complainant to beat a six month limit on filing legal actions imposed by an employment agreement. To compel a complainant to request such a letter in order to meet a six month limitations period would be to circumvent the purpose of the 180 day period of administrative jurisdiction, *viz.,* investigation and possibly resolution of the complainant's charge.

Finally, FedEx further suggests that O'Phelan could have filed her claim and then immediately applied for a stay pending receipt of the right to sue notice. But a civil action may not be brought by

8

an individual until a right to sue notice has been issued. 42 U.S.C. § 2000e(f)(1) (2000). And unlike the plaintiff in *Taylor*, O'Phelan is filing no other claim in conjunction with this suit. 966 F.2d at 1190.

Moreover, FedEx had constructive notice of a potential impending lawsuit within the six month limitations period. EEOC regulations require that the respondent to a filed charge be notified by service of a copy of the charge, by mail or in person, within ten days after filing. 29 C.F.R. §1601.14(a) (2004). FedEx has not claimed that it did not receive such notice. FedEx cannot therefore claim that O'Phelan has brought an unexpected case after an unreasonably long period of time. The employment agreement's six month limit in which to file suit is not enforceable against O'Phelan's Title VII claim.

### B. Hostile Work Environment

To establish a prima facie hostile work environment, O'Phelan must demonstrate that the harassment was "subjectively and objectively 'so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'" *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004) (quoting *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002)). A plaintiff establishes an alteration in the terms and conditions of employment by demonstrating either a tangible employment action, such as discharge, demotion or a change in benefits, or a non-tangible action, such as discriminatory conduct that is so severe or pervasive as to create an "abusive" working environment. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). In determining whether the environment was objectively hostile, the court must consider all of the circumstances, including the frequency and severity of the conduct, whether it was threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interfered with an employee's work. *Id.* at 983.

O'Phelan argues that Parrilli's conduct constituted a non-tangible employment action so severe

or pervasive that it created an abusive working environment. By far, the principal source of the alleged sexually harassing and threatening conduct was Parrilli. FedEx first argues that the unwelcome or threatening statements allegedly made by Parrilli are hearsay and therefore inadmissible. Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). O'Phelan is not offering Parrilli's out of court statements to prove the truth of Parrilli's assertions, i.e., that he wanted to have carnal knowledge of her. Rather, she is offering the statements to show that such assertions were made and to demonstrate the upsetting effects those statements had upon her. As such, they are not hearsay and are admissible.

O'Phelan argues that Parrilli's conduct was so severe and pervasive as to create an abusive working environment. She alleges numerous inappropriate comments by Parrilli as often as "every other day," although she admits that the frequency of such comments varied over time, particularly during intervals following her verbal complaints to Camporese. A series of offensive statements, if sufficiently severe and pervasive, can give rise to an objectively hostile work environment. *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1456 (7th Cir. 1994). If O'Phelan's allegations about Parrilli's conduct are true, then they are sufficiently abusive and threatening to constitute actionable harassment. The Seventh Circuit has indicated that a cause of action for harassment can be sustained if it crosses "the line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995). Parilli's repeated requests for sexual favors and his threats of retaliation, if they occurred, certainly cross this line. *See Quiroz v. Hartgrove Hosp.*, No. 97 C 6515, 1999 WL 281343, at *7 (N.D. Ill. Mar. 24, 1999) (repeated requests for dates and attempts to kiss plaintiff constitute actionable harassment); *Dey*, 28 F.3d at 1456-57 (series of offensive utterances give rise to objectively hostile work environment where comments

10

and innuendo were overtly sexual in nature and specifically directed at plaintiff). A reasonable jury could find that Parilli's conduct thus created an objectively hostile and abusive work environment. *Quiroz*, 1999 WL 281343, at *8. FedEx has stipulated, for purposes of this motion, that O'Phelan subjectively felt that her work environment was hostile.

However, O'Phelan's lawsuit is not against Parrilli, who is deceased, but against her employer, FedEx. O'Phelan must therefore present a sustainable theory of employer liability. An initial question in generating such a theory is whether Parrilli was, in his capacity as team leader, O'Phelan's supervisor or merely a coworker. Harassment by a supervisor, or other superior in the chain of command, triggers strict employer liability, subject to an affirmative defense if the employee suffered no adverse employment action. *Parkins v. Civil Constrs. of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). However, if Parrilli was O'Phelan's coworker, rather than her supervisor, O'Phelan is further burdened with demonstrating that FedEx negligently failed to take steps to discover or remedy the illegal harassment. *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 381 (7th Cir. 2002).

"Supervisor" is a legal term of art for Title VII purposes: a supervisor is someone with the power to *directly* affect the terms and conditions of a worker's employment. *Parkins*, 163 F.3d at 1034. Such authority consists of the power to hire, fire, demote, promote, transfer or discipline an employee. *Id*. Power merely to oversee or direct an employee's work operations, or to provide input into an employee's evaluations does not constitute sufficient authority to establish an individual as a supervisor for Title VII purposes. *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 355 (7th Cir. 2002).

As team leader, Parrilli had the authority to delegate with whom O'Phelan would work each day, to direct her work and to recommend disciplinary action should she fail to do so, and to authorize overtime or time off if another manager was unavailable to consider the request. However, he lacked

11

any power directly to affect the terms and conditions of O'Phelan's employment as established by the Seventh Circuit in *Parkins*. 163 F.3d at 1034. The fact that Parrilli had authority to oversee aspects of O'Phelan's job performance does not elevate Parrilli to supervisory status for Title VII purposes, and he is therefore considered a coworker. *Rhodes v. Ill. DOT,* 359 F.3d 498, 506 (7th Cir. 2004).

FedEx's potential liability rests, therefore, upon the question of whether it was negligent in failing to discover and remedy Parrilli's alleged harassment of O'Phelan. The Seventh Circuit has held that the reasonableness of an employer's response to a complaint of harassment rests on the gravity of the harassment, the sufficiency of the information made available by the employee, and whether the remedial action is timely and likely to prevent recurrence of the offending conduct. *Quiroz*, 1999 WL 281343, at *10 (citing *Perry v. Harris Chernin, Inc.*, 126 F.2d 1010, 1013-14 (7th Cir. 1997)). The focus of the inquiry is not whether the remedial action ultimately succeeded, nor whether the action met the expectations of the employee, but whether the employer's response was reasonable under the existing circumstances. *Id.*

O'Phelan challenges the reasonableness of FedEx's remedial responses to her complaints. She alleges that her verbal complaints to Camporese resulted only in temporary surcease from Parrilli's harassment. She also alleges that switching Parrilli's starting time by one or two hours so that she would not be working alone with him was not a reasonable response to her complaint because Parrilli was still able to harass her and retaliate for her filing of the complaint. Furthermore, O'Phelan claims that Parrilli was not subject to a disciplinary write-up, nor was O'Phelan informed of the actions taken with respect to Parrilli. O'Phelan alleges that FedEx's responses were unreasonably deficient and that the harassment stopped only when Parrilli left on extended medical leave. FedEx responds that it conducted a substantial investigation of O'Phelan's complaint and was unable to substantiate her claims,

12

but nevertheless took precautionary steps in demoting Parrilli and altering his work hours. The court concludes that whether FedEx's response was reasonable in addressing O'Phelan's complaint is a question of material fact for the jury to decide. FedEx is not entitled to summary judgment on this claim.

### C. Retaliation

O'Phelan claims that she was subject to retaliation following the December 20, 2000 meeting with Parrilli, Camporese and Surtz, and that the retaliation increased following the filing of her written complaint in February 2001. O'Phelan alleges that, after she complained to Fed Ex, Parilli retaliated against her by intensifying his harassment of her. O'Phelan further claims that FedEx's retaliatory acts consisted of: (1) failing to respond adequately to her complaints of Parrilli's continuing threats and harassment; (2) charging her with three weeks of FMLA leave instead of the non-FMLA leave she alleges that Surtz agreed to; (3) being given heavy lifting jobs and a disproportionate workload despite the fact that she was pregnant; (4) posting a "defamatory" birth announcement; (5) wrongly disciplining her following the alleged "shirt lifting" incident; and (6) failing adequately to investigate the deposit of the pornographic magazine in her company mailbox.

There are two routes available to O'Phelan to prevent summary judgment for FedEx with respect to her claim of retaliation. *Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). She may present direct evidence, without resort to inferences from circumstantial evidence, that she engaged in protected activity (filing a charge of discrimination) and suffered an adverse employment action as a result. *Id.* at 644. Such cases of direct evidence are rare, and O'Phelan presents no such direct evidence against FedEx. Alternatively, O'Phelan may provide evidence to show that after filing her discrimination charge she, and no other similarly situated employee who did not file a

13

charge, suffered an adverse employment action even though she was performing her job in a satisfactory manner. *Id.* If FedEx can then present unrebutted evidence that there was a legitimate reason for the adverse action, it is entitled to summary judgment; otherwise there must be a trial. *Id.*

O'Phelan argues that, after she complained of sexual harassment to FedEx, Parrilli retaliated against her by ratcheting up his harassment of her. *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 567 n.5 (7th Cir. 2004) ("[H]ostile work environment can be a form of retaliation."). O'Phelan has put forward evidence, which FedEx does not dispute, that she engaged in protected activity and was performing her job in a satisfactory manner. However, O'Phelan fails to put forward evidence of a similarly situated person who did not complain of harassment and was not subjected to a hostile work environment. While this failure would normally doom her claim, the court will not elevate form over function in this case. The court notes – and FedEx does not provide any evidence otherwise – that a company the size of FedEx undoubtedly has at least one other similarly situated employee who did not lodge a complaint of sexual harassment and was not subjected to a hostile work environment. The rest of the burden shifting described in *Stone* is inapplicable here because FedEx could not have had a "legitimate reason" for subjecting O'Phelan to a hostile work environment. With respect to O'Phelan's allegations against her supervisors at FedEx, her arguments are not as strong. However, the court declines to fracture a claim which, in significant part, it must try. *Accord Ambre v. Joe Madden Ford*, 881 F. Supp. 1187, 1193 (N.D. Ill. 1995) ("[A]n order granting summary judgment must dispose of an entire claim as opposed to a single portion of a claim.").

## CONCLUSION

As explained above, FedEx's motion for summary judgment is denied in part.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

Dated: September 27, 2005